IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR DADE
COUNTY, FLORIDA

550 SEABREEZE DEVELOPMENT, LLC

    Plaintiffs,

    v.                    CASE NO.: _____

ILLINOIS UNION INSURANCE COMPANY,

    Defendants,

_____/

## COMPLAINT FOR DECLARATORY RELIEF

    Plaintiff, 550 Seabreeze Development, LLC (hereinafter "550 Seabreeze"), by and through

their undersigned counsel, sues, Defendant, Illinois Union Insurance Company, and alleges as

follows:

## GENERAL ALLEGATIONS

    1.    This is an action for Declaratory Relief which creates proper jurisdiction with this

Court pursuant to FL. St. §§86.011 and 86.021.

    2.    That at all times material hereto the Plaintiff, 550 Seabreeze, was a Florida limited

liability company, licensed to and conducting business in the State of Florida at 19501 Biscayne

Blvd., Ste. 400, Aventura, FL 33180.  550 Seabreeze at all times material hereto was doing

business as 550 Seabreeze.

    3.    That the Defendant, Illinois Union, is a Foreign corporation with its principle place

of business in Chicago, Illinois, and was licensed to and in fact was conducting business in the

state of Florida and more specifically in Miami-Dade County by issuing the subject policy.


EXHIBIT
A

## IDENTIFICATION OF THE PARTIES

4.      550 Seabreeze was developing or constructing a 12-story hotel located at 550 Seabreeze Blvd., Ft. Lauderdale, Florida known as Las Olas Group/Indigo Hotel hereinafter referred to as the "insured project".

5.      550 Seabreeze is the named insured under the below described Illinois Union policy of insurance which had an effective date of June 1, 2017 through December 15, 2017. This policy period covers the date of loss of September 10, 2017.

6.      For the purposes of convenience to the parties and to this Court, the Plaintiff and all additional insured's will collectively be referred to at 550 Seabreeze.

7.      The Defendant, Illinois Union, is an insurance carrier that did in fact issue a policy to Plaintiff providing Builder's Risk Insurance Coverage for the Insured Project bearing Policy Number 108881579001 to Plaintiff, 550 Seabreeze.  Said Policy and the Declaration Sheet pertaining thereto is attached hereto as Composite Exhibit "A").  Said policy does in fact provide coverage for the subject loss and was in full force and effect at all times material hereto.

## FACTS GIVING RISE TO THIS CAUSE OF ACTION

8.      On or about September 10, 2017, the Insured Project sustained direct physical damage/loss.  Said loss was estimated to be One Million Eight Hundred Sixty-Three Thousand Three Hundred Forty-One and 95/100 Dollars ($1,863,341.95). Damages are still being realized and Plaintiff reserves the right to submit additional damage/loss calculations.

9.      The majority of known damages were to the interior of the Insured Project and caused by rain.

10.     Accordingly, 550 Seabreeze made a claim against the subject Illinois Union policy in the amount of One Million Eight Hundred Sixty-Three Thousand Three Hundred Forty-One and 95/100 Dollars ($1,863,341.95) under the "Rain, Sleet Ice, or Snow Limited Coverage" endorsement.

11.    The "Rain, Sleet, Ice, or Snow Limited Coverage" endorsement has a Two Hundred Fifty Thousand Dollars ($250,00.00) deductible for claims made thereunder.

12.    Illinois Union adjusted the subject claim and valued the loss of One Million One Hundred Thirty-Nine Thousand Five Hundred Six and 66/100 Dollars ($1,139,506.66).

13.    Despite multiple demands, Illinois Union failed and/or refused to pay One Million Six Hundred Thirteen Thousand Three Hundred Forty-One and 001/00 Dollars ($1,613,341.00) (the difference between the amount claimed, One Million Eight Hundred Sixty-Three Thousand Three Hundred Forty-One and 95/100 Dollars ($1,863,341.95), and the deductible of Two Hundred Fifty Thousand Dollars ($250,000.00).

14.    Likewise, Illinois Union failed to even pay Eight Hundred Eighty-Nine Thousand Five Hundred Six and 66/100 Dollars ($889,506.66) which represents the difference between Illinois Union valuation of loss[1] One Million One Hundred Thirty-Nine Thousand Five Hundred Six and 66/100 Dollars ($1,139,506.66) and the deductible of Two Hundred Fifty Thousand Dollars ($250,000.00).

15.    Rather Illinois Union asserts that the "Named Windstorm" deductible is applicable for this loss.  Said deductible is calculated by Illinois to be One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00).  Accordingly, it is Illinois' position that no monies are owed under either loss calculation in that the deductible exceeds both calculations.

### COUNT I – DECLATORY JUDGMENT

Plaintiff herein reincorporates and realleges paragraphs 1 through 15 above as more fully set forth herein below:

16.    The current and genuine dispute arises from a disagreement between 550 Seabreeze and Illinois Union with regard to the interpretation of the deductible provisions under the subject policy.

---

[1] Plaintiff does not consent to Illinois Union's valuation.

17.     It is unquestioned that Plaintiff has complied with all conditions precedent under the policy and further that there is coverage under the policy for the subject loss.

18.     Illinois Union has taken the position that the applicable deductible is the "Named Windstorm" deductible and that said deductible amount exceeds the amount claimed under the policy.

19.     550 Seabreeze disagrees with Illinois Union and contends that the applicable deductible under the subject policy is the "Rain, Sleet Ice, or Snow Limited Coverage Endorsement" which triggers payment under the policy under either damage calculation.

20.     As such, Plaintiff is now in doubt as to its rights under the Illinois Union policy and hereby requests this court to declare its rights and obligations under Illinois Union's policy.

21.     In addition, there is a genuine dispute between the parties concerning questions of law as it would apply to the subject policy which the Plaintiff believes requires intervention by this Court pursuant to FL. St. §§86.011 and 86.021 to determine the respective rights and obligations of the parties herein.

22.     To wit, the Plaintiff believes that the applicable deductible is the applicable "Rain, Sleet, Ice or Snow Limited Coverage" endorsement in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00).

23.     To the contrary, the Defendant is claiming that the applicable deductible is the Windstorm Deductible (5% or $1,500,000.00).

24.     This Court has jurisdiction to make this determination pursuant to FL. St. §§86.011 and 86.021.

25.     Based upon this actual and genuine dispute, the subject Declaratory Judgment Action has been filed and Plaintiff has been forced to retain the undersigned counsel and has agreed to pay him a reasonable fee for his services.

WHEREFORE, based on the foregoing, Plaintiff hereby requests that this Court declare Plaintiff's rights under the subject policy as follows:

      a). That the subject policy was in full force and effect at the time of the loss;

      b). that there is coverage under the subject policy for the subject loss;

      c). that the "Rain, Sleet, Ice or Snow Limited Coverage" deductible of Two Hundred Fifty Thousand Dollars ($250,000.00) is applicable and not the "Named Windstorm" deductible in the amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,00.00) as alleged by Illinois Union;

      d). That Illinois Union has a duty to pay or indemnify Plaintiff for any and all damages in excess of the Two Hundred Fifty Thousand Dollars ($250,000.00) "Rain, Sleet, Ice or Snow Limited Coverage" deductible; and

      e). That the Plaintiff is entitled to attorney fees and costs for pursuing this action pursuant to F.S. 86.011 and F.S. 86.021 and F.S. 627.0426

## COUNT II – BREACH OF CONTRACT

Plaintiff herein reincorporates and realleges Paragraphs 1 through 14 above as more fully set forth herein;

26.    Plaintiff, 550 Seabreeze, and Defendant, Illinois Union, entered into a contract for insurance wherein Plaintiff, 550 Seabreeze, was to pay premiums in exchange for Defendant, Illinois Union, issuing a Builder's Risk Insurance Policy (Policy No. 108881579001) and to adjust, and in good faith pay claims, made thereunder.

27.    Plaintiff has made all premium payments and has fulfilled all conditions precedent to bring this claim.

28.    Defendant has issued the subject policy of Builder's Risk Insurance, however, has failed to adjust and pay Plaintiff's claim stemming from the "direct physical damages/loss" sustained by Plaintiff on September 10, 2017, despite repeated demands by Plaintiff.

29. Accordingly, Defendant is in breach of its obligations under the subject policy of insurance.

WHEREFORE, Plaintiff requests a Judgment finding the Defendant in breach of the subject policy of insurance, and award damages to the Plaintiff, for said breach as allowed by the subject policy, and award reasonable fees and costs pursuant to F.S. 627.426.

Dated this ___ day of September 2019.

SCOTT R. SCHOMBER, ESQ.
Florida Bar No.: 882488
5900 N. Andrews Avenue, Suite 710
Phone: (305) 933-5565
Fax: (305) 933-5596
sschomber@mcconnaughhay.com
anelson@mcconnaughhay.com
Attorney for Plaintiff

## Surplus Lines Declarations

# Westchester
### A Chubb Company

| Policy No. I08881479 001 | Renewal of: NEW |

**NAMED INSURED & MAILING ADDRESS**

550 Seabreeze Development LLC
19501 Biscayne Blvd Suite 400
Aventura, FL 33180

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

**POLICY PERIOD**

| When Coverage Begins: | 06/01/2017 | 12:01 A. M. Local Time At Named Insured's Address |
| When Coverage Ends: | 12/15/2017 | 12:01 A. M. Local Time At Named Insured's Address |

| INSURING COMPANY | Producer's Name & Address: |
|---|---|
| **Illinois Union Insurance Company** | AMWINS BROKERAGE OF GEORGIA LLC<br>3630 PEACHTREE ROAD NE SUITE 1700<br>ATLANTA, GA 30326<br><br>Producer No: 277387 |

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

| | |
|---|---|
| Surplus Lines Agent's Name: | Michael Orren Christian |
| Surplus Lines Agent's Address: | 3630 Peachtree Road NE St. 1700 |
| | Atlanta, GA 30326 |
| Surplus Lines Agent's License #: | A046973 |
| Producing Agent's Name: | Maritza Valcarce - License #A270968 |
| Producing Agent's Address: | 9850 NW 41st Street, Suite 100 |
| | Miami, FL 33178 |

This Insurance Is issued pursuant to the Florida Surplus Lines Law. Persons Insured by surplus lines carriers do not have the protection of the Florida Insurance Guaranty Act to the extent of any right of recovery for the obligation of an Insolvent unlicensed Insurer.

| Premium: $80,000.00 | Tax: $4,001.75 | Service Fee: $80.04 |
| EMPA Surcharge: $4.00 | Broker Fee: $35.00 | |
| Inspection Fee: $0.00 | Policy Fee: $0.00 | |

Surplus Lines Agent's Countersignature: _____

SLPD (03/08)

**EXHIBIT**

A

## Common Policy Declarations

# Westchester
A Chubb Company

Policy Number: I08881479 001
Named Insured & Mailing Address:
**550 Seabreeze Development LLC**
19501 Biscayne Blvd Suite 400
Aventura, FL 33180

Company Name: Illinois Union Insurance Company
Producer's Name & Address:
**AMWINS BROKERAGE OF GEORGIA LLC**
**3630 PEACHTREE ROAD NE SUITE 1700**
**ATLANTA, GA 30326**
**277387 - New**

| General Policy Information | Business Description: | **Limited Liability Corporation** | |
|---|---|---|---|
| | When Coverage Begins: | **06/01/2017** | 12:01 A.M. Local Time at Named Insured's Address |
| | When Coverage Ends: | **12/15/2017** | 12:01 A.M. Local Time at Named Insured's Address |

In return for the payment of premium, and subject to all the terms and conditions of this policy, we agree to provide the insurance as stated in this policy.

The premium for this policy is indicated below next to the applicable Coverage Form(s).

*Coverage Form*

| Coverage | Amount |
|---|---|
| **Construction Risk** | $ 80,000 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **Total Premium:** | $ 80,000 |
| **Total Assessments, Fees, Surcharges, Taxes:** | $ 0 |
| **Total Amount Due:** | $ 80,000 |
| **Minimum Earned Premium:** | $ 20,800 |

| Attached Forms Information | See Forms Schedule CPfs2 |
|---|---|

**Authorization Information**

Date: 6/8/2017

JOHN J. LUPICA, President
Authorized Representative

These Declarations together with the Coverage Declarations, Common Policy Conditions and Coverage Conditions (if applicable), Coverage Form(s) and Forms and Endorsements, if any, issued to form a part thereof, complete the above numbered policy.

©Chubb. 2016. All rights reserved.

# *Forms Schedule*

Company: Illinois Union Insurance Company
SYM:  IMC          Policy ID: I08881479 001

| Policy Period | When Coverage Begins: | 06/01/2017 | 12:01 A.M. Local Time At Named Insured's Address |
|---|---|---|---|
| | When Coverage Ends: | 12/15/2017 | 12:01 A.M. Local Time At Named Insured's Address |

| Applicable to all Coverage Parts | Form No. and Description |
|---|---|
| | WSG-084 (05/11)-Surplus Lines Broker Notice |
| | SLPD (03/08)-Surplus Lines Declarations |
| | BB-5W58a (09/11)-Common Policy Declarations |
| | ALL-21101 (11/06)-Trade or Economic Sanctions Endorsement |
| | SL-44730 (11/14)-Service Of Suit Endorsement - Florida |
| | ALL-20887 (10/06)-CHUBB Producer Compensation Practices & Policies |
| | ALL-5X45 (11/96)-Questions About Your Insurance |
| | IL P 001 (01/04)-U.S. Treasury Departments' Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |

| Commercial Inland Marine | Form No. and Description |
|---|---|
| | ACE0727 (10/15)-Construction Risk Declarations |
| | ACE0728 (10/15)-Construction Risk Coverage Form |
| | ACE0210 (01/08)-Nuclear, Biological, Chemical, Radiological Exclusion |
| | ACE0782 (08/14)-Protective Safeguards Endorsement |
| | ACE0812 (10/15) -Rain, Sleet, Ice Or Snow Limited Coverage Endorsement |
| | ALL-10750 (01/15)-Terrorism Exclusion Endorsement |
| | TRIA24 (01/15)-Policyholder Disclosure Notice of Terrorism Insurance Coverage |
| | MA-608255p (04/15)-Claims Directory Property and Inland Marine |
| | LD-5S23j (03/14)-Signature Endorsement |

# *Westchester*
## A Chubb Company

## CONSTRUCTION RISK DECLARATIONS

SYM: IMC        Policy ID: I08881479 001

Company Name:    Illinois Union Insurance Company

**NAMED INSURED & Mailing Address**

550 Seabreeze Development LLC
19501 Biscayne Blvd Suite 400
Aventura , FL  33180

**Producer's Name & Address**

AMWINS BROKERAGE OF GEORGIA LLC
3630 PEACHTREE ROAD NE SUITE 1700
ATLANTA, GA  30326
277387

| General Policy Information | | | |
|---|---|---|---|
| | When Coverage Begins: | 06/01/2017 | 12:01 A.M. Local Time at the NAMED INSURED's Address |
| | When Coverage Ends: | 12/15/2017 | 12:01 A.M. Local Time at the NAMED INSURED's Address |

**In return for the payment of premium and subject to all the terms and conditions of this Policy, the Company agrees to provide the insurance as stated in this Policy.**

Whenever "NCP" is shown below it denotes no coverage has been purchased and no coverage is provided.  Whenever "NA" is shown below it denotes "Not Applicable" to that coverage, deductible, Sub-limit of Insurance, or other policy provision.

## I. Description, Location and Estimated Completed Value of the INSURED PROJECT at Policy Inception

A.  Estimated construction contract price: $30,000,000

B.  Value of all property not declared in A. above to be insured by this Policy and intended for installation under the construction contract, whether supplied by the INSURED PROJECT owner(s) or others(s): $0

C.  Estimated Completed Value of the INSURED PROJECT at Policy Inception: $30,000,000

D.  INSURED PROJECT Name:  Las Olas Group / Indigo Hotel

E.  INSURED PROJECT Description/Construction: Construction of a 12 story hotel, 223,275 square feet, with 136 rooms, and 191 vehicle parking facility on the lower level of the building. Construction originally started in May 2015. Construction is steel with masonry concrete.

F.  INSURED PROJECT Site: 550 Seabreeza Blvd, Ft Lauderdale, Florida, 33316

## II. Limits of Insurance

$30,000,000        (100 %)    part of   $30,000,000            Per OCCURRENCE

The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the above Limit of Insurance.  In addition, the Company will not pay for more than its proportionate share (100 %) of the following Sub-limits of Insurance and Annual Aggregate Sub-limits of Insurance, which are part of, and not in addition to, the Limit of Insurance above:

**Sub-limits of Insurance**

A.  Physical LOSS to the INSURED PROJECT                $            30,000,000

ACE0727 (10/15)

©Chubb. 2016. All rights reserved.

**Westchester**
A Chubb Company

| | | |
|---|---|---|
| B. Delay in Opening (per Form Number ACE0729) | $ | Not Covered |
| C. EXISTING PROPERTY | $ | Included |
| D. Damage to EXISTING PROPERTY - Limited | $ | Not Covered |
| E. Property in Transit per Conveyance | $ | 500,000 |
| F. Temporary Off-site Storage and Off-site Staging Areas, any one location | $ | 500,000 |
| G. Expediting and Extra Expenses | | 20% of the insured physical LOSS, or $500,000 ; whichever is less |
| H. Debris Removal | | 25% of the insured physical LOSS, or $1,000,000 ; whichever is less |
| I. Trees, Shrubs and Plants | $ | 100,000 |
| J. Protection Service Charges | $ | 50,000 |
| K. Fire Protective Equipment Recharge | $ | 25,000 |
| L. Valuable Papers and Records | $ | 50,000 |
| M. Claim Preparation Expenses | $ | 25,000 |
| N. Protection of Insured Property Pre-LOSS | $ | 25,000 |
| O. Architects and Engineers Fees | $ | 25,000 |
| P. Office and Construction Trailers/Semi-trailers and their Contents | $ | 1,000 |
| Q. Ordinance or Law | $ | 500,000 |
| R. TESTING | $ | Per Form |
| S. Business Personal Property | $ | 1,000 |
| T. Contract Penalty | $ | 1,000 |
| U. TOWER CRANE Re-Erection Expense | $ | Not Covered |
| V. NAMED WINDSTORM | $ | 30,000,000 |

**Annual Aggregate Sub-limits of Insurance**

**If a Sub-limit of Insurance is shown below for FLOOD or EARTH MOVEMENT, the applicable Excluded Cause of LOSS contained in the Construction Risk Coverage Form is deleted.**

| | | | |
|---|---|---|---|
| A. FLOOD | Per OCCURRENCE | $ | 25,000,000 |
| | Annual Aggregate | $ | 25,000,000 |
| B. EARTH MOVEMENT | Per OCCURRENCE | $ | 25,000,000 |
| | Annual Aggregate | $ | 25,000,000 |
| C. Pollution or | Per OCCURRENCE | $ | 25,000 |
| Contamination Clean-Up | Annual Aggregate | $ | 25,000 |
| D. Limited Coverage for | Per OCCURRENCE | $ | Not Covered |
| FUNGUS, Wet Rot, Dry Rot or Bacteria | Annual Aggregate | $ | Not Covered |

 ©Chubb. 2016. All rights reserved.

# *Westchester*
### A Chubb Company

**III. Escalation Clause**   The Sub-limit of Insurance for Physical LOSS to the INSURED PROJECT stated above is considered an estimate. Should any increase in the Estimated Completed Value of the INSURED PROJECT occur, the Sub-limit of Insurance for Physical LOSS to the INSURED PROJECT will automatically increase to reflect the change concurrently, subject to a maximum increase of 0 % of the original Sub-limit of Insurance stated above. The Per OCCURRENCE Limit of Insurance stated above will increase by the same amount.

This clause does not apply to other Sub-limits of Insurance, including Delay in Opening, if endorsed to this Policy, nor does it apply to the Annual Aggregate Sub-limits of Insurance.

**IV.  Deductibles**   $25,000   direct physical LOSS in any one OCCURRENCE except;

| | | |
|---|---|---|
| A.  LOSS in any one OCCURRENCE caused by or resulting from FLOOD | $ | 250,000 or 5 % |
| Subject to a maximum deductible of: | $ | N/A |
| B.  LOSS in any one OCCURRENCE caused by or resulting from EARTH MOVEMENT | $ | 50,000  or N/A % |
| Subject to a maximum deductible of: | $ | N/A |
| C.  LOSS  in any one OCCURRENCE caused by or resulting from WATER DAMAGE | $ | 250,000  or N/A % |
| Subject to a maximum deductible of: | $ | N/A |
| D.  LOSS in any one OCCURRENCE caused by or resulting from NAMED WINDSTORM | $ | 250,000 or 5 % |
| Subject to a maximum deductible of: | $ | N/A |
| E.  LOSS in any one OCCURRENCE caused by or resulting from TESTING | $ | 25,000  or N/A % |
| F.  LOSS in any one OCCURRENCE caused by or resulting from N/A | $ | NCP  or N/A % |

**V.  Rates and Adjustment**

| Coverage Type | Rate | | Term Deposit |
|---|---|---|---|
| INSURED PROJECT Physical LOSS | Various | Per $100 **Annual** | 80,000 |
| Delay in Opening | Not Covered | Per $100 **Annual** | N/A |
| TESTING (N/A  days) | N/A | Per $100 **Term** | N/A |
| TESTING (N/A  days) Delay in Opening | N/A | Per $100 **Term** | N/A |
| Total Deposit Premium | | | 80,000 |

Subject to a minimum earned premium of $20,800

ACE0727 (10/15)                    ©Chubb. 2016. All rights reserved.                    Page 3 of 5

*Westchester*
A Chubb Company

**VI. Extension of Term**

This Policy may be extended for a period not to exceed (0) days from the original expiration date shown above, subject to the same terms and conditions in effect at the time of the extension, and subject to a pro-rata additional premium, exclusive of TESTING.

NOTE: Premium rates applicable to coverage during the period of June 1st through November 30th (NAMED WINDSTORM Season) may differ from rates applicable during the period December 1st through May 31st, and additional premium for extensions will reflect those pricing differences. .

The TESTING PERIOD may be extended for a period not to exceed (0) days from the number of days for TESTING stated in V. Rates and Adjustment above, subject to the same terms and conditions in effect at the time of the extension, and subject to an additional premium based upon the number of days of the extension period.

The NAMED INSURED must request these extensions in writing and receive acceptance from the Company prior to the original expiration date of this Policy. If the NAMED INSURED does not provide the aforementioned written extension request(s), coverage provided hereunder shall terminate on the original expiration date stated in this Policy.

**VII. Additional NAMED INSURED Information**

Straticon LLC d/b/a Straticon Construction Services

Jawof 515 Seabreeze, LLC 19501 Biscayne Blvd. Suite 400, Aventura, FL 33180

**VIII. Mortgagee and Loss Payee Information**

The Bancorp Bank
409 Silverside Road, Suite 105
Wilmington, DE 19809

**IX. Attached Forms Information**

See Forms Schedule CPfs2

ACE0727 (10/15)

©Chubb. 2016. All rights reserved.

*Westchester*
A Chubb Company

**Date:**    **06/08/2017**

_____
Authorized Representative



# CONSTRUCTION RISK COVERAGE FORM

Words and phrases that appear in CAPITALS are defined in this Policy.  Refer to PART F. DEFINITIONS section in this Policy.

## PART A
## INSURING AGREEMENT

This Policy, subject to the terms, conditions and exclusions stated herein or endorsed hereto, insures against direct physical LOSS to property of every kind and description intended to become a permanent part of, or be consumed in, the construction, fabrication, assembly, installation, erection or alteration of the INSURED PROJECT, as described on the Declarations and for which values have been declared and deposit premium paid. If not covered by other insurance and if values have been declared to the Company for deposit premium calculation, this Insuring Agreement shall include coverage for TEMPORARY STRUCTURES.

## PART B
## LIMITS OF INSURANCE

The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the amount stated on Section II. of the Declarations, subject to the following:

1.   Sub-limits of Insurance

The Company will pay no more for direct physical LOSS in any one OCCURRENCE than the Sub-limit of Insurance stated on Section II of the Declarations for each applicable Coverage or Extension of Coverage.

If a Sub-Limit of Insurance for NAMED WINDSTORM is stated on the Declarations that does not state "Included" or is less than the Limit of Insurance Per OCCURRENCE stated on the Declarations, the most the Company will pay for under this Policy in any one OCCURRENCE from a NAMED WINDSTORM for all Coverage(s) and Extensions of Coverage in or endorsed on this Policy, including the Delay in Opening Coverage, is the Sub-limit of Insurance for NAMED WINDSTORM stated on the Declarations.

2.   Annual Aggregate Sub-limits of Insurance

Notwithstanding the foregoing, and irrespective of the stated Limit of Insurance or Sub-limits of Insurance on the Declarations, the most the Company will pay for direct physical LOSS in any one OCCURRENCE, and in the aggregate for direct physical LOSS from all OCCURRENCES in any one Policy year for all Coverage(s) and Extensions of Coverage in or endorsed on this Policy, including the Delay in Opening Coverage, is the Annual Aggregate Sub-limit(s) of Insurance stated on the Declarations.

These Sub-limits of Insurance and Annual Aggregate Sub-limits of Insurance are part of, and not in addition to, the Limit of Insurance per OCCURRENCE stated on the Declarations.

©Chubb. 2016. All rights reserved.



## PART C
## EXTENSIONS OF COVERAGE

This Policy, subject to all the terms, conditions and exclusions stated herein or endorsed hereto, is extended to insure the following extensions of coverage if a dollar value is stated in the applicable Sub-limit(s) of Insurance or Annual Aggregate Sub-limit(s) of Insurance on the Declarations.

1.   EXISTING PROPERTY

The Company will pay for direct physical LOSS by an insured peril to the EXISTING PROPERTY at the INSURED PROJECT site.

For the purposes of this Extension of Coverage, EXISTING PROPERTY does not include any personal property or underground utilities of any kind.

2.   Damage to EXISTING PROPERTY – Limited

The Company will pay for direct physical LOSS by an insured peril to the EXISTING PROPERTY at the INSURED PROJECT Site.  Coverage for such EXISTING PROPERTY applies only: (1) when the insured property is contained within or is attached to the EXISTING PROPERTY; and (2) to the extent LOSS arises out of the contractor's performance of work on or within the EXISTING PROPERTY.

For the purposes of this Extension of Coverage, EXISTING PROPERTY does not include personal property or underground utilities of any kind.

The Company will not pay for LOSS to EXISTING PROPERTY caused by or resulting from the following:

A.  Mechanical breakdown, including rupture or bursting caused by centrifugal force;
B.  Electrical injury or disturbance caused by electrical currents artificially generated;
C.  Interruption of incoming electricity, fuel, water, gas, steam, refrigerant or other services except as specifically covered in this policy or unless such interruption of services directly result in physical LOSS not otherwise excluded by this policy.
D.  Explosion, rupture or bursting of steam boilers, steam pipes, steam turbines or steam engines owned, leased or operated under the Insured's (including Additional Insured's) control. Direct physical LOSS caused by or resulting from explosion of gases or fuel within the furnace or any fired vessel or within the flues or passages through which the gases or combustion pass is covered.
E.  LOSS caused by or resulting from EARTH MOVEMENT, FLOOD, NAMED WINDSTORM or the peril of wind.
F.  Any Delay in Opening coverage, including, but not limited to; Loss of RENTAL INCOME, Loss of BUSINESS INCOME, SOFT COSTS/ADDITIONAL EXPENSES.
G.  Any Extension of Coverage for Expediting and Extra Expenses.

Exclusions A, B and C apply unless direct physical LOSS by an insured peril ensues and then this policy insures only such ensuing direct physical LOSS.

3.   Property in Transit

Property in due course of transit that is intended to become a permanent part of, or be consumed in the INSURED PROJECT and subject to the following additional conditions:

A.  Coverage shall attach upon commencement of loading and cease upon completion of unloading.

B.  No coverage is provided for airborne shipments.

C.  No coverage is provided for waterborne shipments except on coastal and inland waterways.

D.  This Extension of Coverage shall be void if the NAMED INSURED enters into any agreement with a carrier, releasing them from their common law or statutory liability or agreeing that this Policy shall in any way inure to the benefit of such carriers. However, the NAMED INSURED may, without prejudice to this Extension of Coverage, accept such bills of lading, receipts, or contracts of transportation as are ordinarily issued by carriers containing a limitation as to the value of insured property.

4.  Temporary Off-Site Storage and Off-Site Staging Areas

Property to be used in, or incidental to, completion of the INSURED PROJECT while located in temporary off-site storage or off-site staging areas away from the INSURED PROJECT site anywhere within the Policy territory, excluding property:

A.  Located at the manufacturer's or supplier's site while being manufactured or processed; or

B.  While in due course of transit if such equipment is the property of, or in the care, custody and control of a manufacturer or supplier.

5.  Expediting and Extra Expenses

In the event of direct physical LOSS insured hereunder, and occurring during the Policy period, the Company will pay for the reasonable and necessary extra costs to make temporary repairs, and to expedite the permanent repair or replacement of the insured property which is damaged by an insured peril; including additional wages for overtime, night work, and work on public holidays and the extra costs of express freight or other rapid means of transportation. In addition, the Company will pay for the reasonable and necessary Extra Expense incurred during the period of restoration and repair that are over and above the total costs that would normally have been incurred during the same period of time had no direct physical LOSS occurred. Extra Expense shall include equipment rental, emergency expenses, temporary use of property, demobilization and remobilization of equipment and facilities and other expenses necessarily incurred to reduce LOSS; excluding however, any coverage provided by the Delay in Opening Endorsement if endorsed to this Policy.

6.  Debris Removal

The Company will pay the expense incurred in the removal of debris of the damaged insured property under this Policy, as a result of direct physical LOSS to insured property by an insured peril.

The Company will not pay the expense to:

A.  Extract CONTAMINANTS OR POLLUTANTS from the debris; or

B.  Extract CONTAMINANTS OR POLLUTANTS from land or water; or

C.  Remove, restore or replace contaminated or polluted land or water; or

D.  Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by CONTAMINANTS OR POLLUTANTS whether or not such removal, transport, or decontamination is required by law or regulation.

 ©Chubb. 2016. All rights reserved.



It is a condition precedent to recovery under this Extension of Coverage that the Company shall have paid or agreed to pay for direct physical LOSS to the insured property hereunder, and that the NAMED INSURED shall give written notice to the Company of intent to claim for cost of removal of debris not later than twelve months after the date of such direct physical LOSS.

Upon exhaustion of the Debris Removal Sub-limit of Insurance and the per OCCURRENCE Limit of Insurance shown on the Declarations, the Company will pay up to an additional $2,500,000 per OCCURRENCE and in the aggregate for debris removal.

7.    Trees, Shrubs and Plants

The Company will pay for direct physical LOSS by an insured peril to trees, shrubs and plants, which are part of the INSURED PROJECT, and which have been installed, are in the process of being installed or awaiting installation at the INSURED PROJECT site.

8.    Protection Service Charges

When a fire department, police department or other governmental authority is called to save or protect insured property from direct physical LOSS by an insured peril, the Company will pay the charges that result from:

A.  A written contract or agreement signed prior to the direct physical LOSS; or

B.  Required by local ordinance.

9.    Fire Protective Equipment Recharge

The Company will pay for the cost to recharge or refill any fire protective equipment owned, in the control of, or used to protect insured property of the NAMED INSURED, when discharged:

A.  To prevent or control direct physical LOSS by an insured peril;

B.  Accidentally; or

C.  As a result of malfunction of the equipment.

In respect of items B. and C. above, the Company will pay for amounts in excess of amounts recoverable under any manufacturer's or supplier's warranty.

10.   Valuable Papers and Records

The Company will pay the cost incurred by the NAMED INSURED to research, replace, restore, or copy those valuable papers, records, documents, blueprints, plans or drawings that are directly related to the INSURED PROJECT, as a result of direct physical LOSS by an insured peril.

11.   Claim Preparation Expenses

The Company will pay reasonable expenses incurred by the NAMED INSURED for preparing and certifying details of a claim resulting from a direct physical LOSS which would be payable under this Policy, provided that the total amount of the direct physical LOSS exceeds the applicable Deductible. Claim Preparation Expenses do not include fees or expenses of general public adjusters, lawyers, or representatives or employees of any broker or agent, and do not include salary or wages of employees of the NAMED INSURED or any of its affiliates.



12. Protection of Insured Property Pre-LOSS

A. If it is necessary to protect or move insured property from an INSURED PROJECT site, off-site storage location or off-site staging area to preserve and protect it from imminently sustaining direct physical LOSS by an insured peril, the Company will pay for those reasonable and necessary expenses incurred by the NAMED INSURED in an effort to protect or remove insured property, including moving and storage expenses, but only to the extent that such expenses reduced LOSS which would otherwise be recoverable under this policy.

B. If, as a result of the NAMED INSURED's efforts to protect the insured property, no direct physical LOSS to the INSURED PROJECT occurs, the deductible applicable to this Extension of Coverage is the deductible stated on the Declarations for direct physical LOSS in any one OCCURRENCE or $100,000, whichever is less.

C. If direct physical LOSS to the INSURED PROJECT does occur, the deductible applicable to the cause of LOSS as shown on the Declarations shall apply, and a separate deductible for this Extension of Coverage shall not apply. However, if the direct physical LOSS and expenses incurred hereunder do not exceed the deductible shown on the Declarations for the applicable cause of LOSS, the deductible applicable to this Extension of Coverage is the deductible stated on the Declarations for direct physical LOSS in any one OCCURRENCE or $100,000, whichever is less.

13. Architects and Engineers Fees

In the event of direct physical LOSS by an insured peril and occurring during the Policy period, the Company will pay necessary and reasonable compensation for architect's and engineer's services and expenses incurred by the NAMED INSURED in connection with the repair or replacement of the INSURED PROJECT, but excluding any costs relating to improvements and betterments to any insured property.

This Extension of Coverage shall not apply to and shall not modify, amend or alter the Delay in Opening Architect and Engineers Fees Coverage when a value is stated and endorsed to this Policy.

14. Office and Construction Trailers/Semi-trailers and their Contents

The Company will pay for direct physical LOSS to office and construction trailers/semi-trailers and their contents, owned by the NAMED INSURED or in the NAMED INSURED's care, custody or control while in, on or within 1,000 feet of the INSURED PROJECT site.

This coverage includes furniture, fixtures, data processing equipment, fax systems and phone systems but this Extension of Coverage does not apply to direct physical LOSS to tools or other contractor's equipment, jewels, jewelry, watches, money, stamps, deeds, letters of credit, documents, tickets, plans, blueprints, specifications or other valuable papers.

This Policy is excess over any other valid or collectible insurance available to the owner of the property.

15. Ordinance or Law

If the repair of direct physical LOSS to insured property caused by an insured peril becomes subject to the enforcement of any ordinance or law that is in force at the time of direct physical LOSS and that:

A. Requires the demolition of parts of the undamaged insured property; or

B. Regulates the construction or repair of damaged insured property;

then the Company will pay for:

 ©Chubb. 2016. All rights reserved.

CHUBB

    1.  The cost of demolishing the undamaged insured property and clearing the site of debris from such demolition; and

    2.  The value of such undamaged part of the insured property which must be demolished; and

    3.  The increased cost of repair and/or reconstruction of the damaged and undamaged insured property on the same site and limited to the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damaged insured property on the same site. However, the Company will not pay for any increased cost of repair or reconstruction unless the damaged insured property is actually rebuilt or replaced.

The Company will not pay the following costs:

    i.  Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating asbestos or other hazardous material;

    ii.  Cost of any governmental direction or request declaring that asbestos or other hazardous material present in, part of or utilized on any damaged or undamaged portion of insured property that can no longer be used for the purpose for which it was intended or installed and must be removed, modified or abated;

    iii.  Cost of demolition or increased cost of repair or reconstruction, debris removal, or other consequential loss caused by the enforcement of any ordinance or law regulating CONTAMINANTS OR POLLUTANTS; or

    iv.  Cost of compliance with the enforcement of any ordinance or law which the NAMED INSURED or owner would have otherwise been required to comply by nature of such ordinance or law in the absence of any direct physical LOSS covered by this Policy.

16.    TESTING

The Company will pay for direct physical LOSS to insured property by an insured peril while such property is undergoing TESTING during the TESTING PERIOD.

Each of the following is a condition precedent to coverage for TESTING:

A.  All specified protective materials, systems and instrumentation are installed, activated and operational.

B.  No supervisory or safety system has been deliberately circumvented, unless such circumvention is necessary for the conduct of testing activities as recommended by written testing procedures and/or manufacturer's specifications and provided that such circumvention does not extend beyond that necessary for conduct of said individual activities.

17.    Business Personal Property

The Company will pay for direct physical LOSS by an insured peril to business personal property intended to be placed in the INSURED PROJECT. This property is insured while in transit and while located at the INSURED PROJECT site. For the purposes of this Extension of Coverage, business personal property includes furniture and fixtures to be placed in but not permanently installed as part of the INSURED PROJECT, including but not limited to business personal property such as beds, desks, chairs, dressers, nightstands, televisions and phones.

 ©Chubb. 2016. All rights reserved.



18. Contract Penalty

If the first NAMED INSURED is a General Contractor, the Company will pay the applicable contract penalties the first NAMED INSURED is required to pay for late completion or non-completion of the INSURED PROJECT as a result of direct physical LOSS to insured property by an insured peril. The penalties must be specified in the construction contract, signed prior to the start of construction.

It is a condition precedent to recovery under this Extension of Coverage that the NAMED INSURED use due diligence and dispatch in restoring the damaged property to the condition existing prior to the LOSS.

This Extension of Coverage shall not apply to and shall not modify, amend or alter the Delay in Opening Coverage when a value is stated and endorsed to this Policy.

19. Reward

At the Company's option, the NAMED INSURED may be reimbursed for rewards paid, other than to the NAMED INSURED, or any of the NAMED INSURED's partners, members, managers or officers, for information leading to the conviction of any one or more persons responsible for LOSS insured under this Policy. The Company will be the sole judge as to the payment and amount of the reimbursement.

The most the Company will pay in any one OCCURRENCE under this Extension of Coverage is $15,000.

20. TOWER CRANE Re-Erection Expense

If a TOWER CRANE not covered under this Policy is damaged as a result of direct physical LOSS by an insured peril while at the INSURED PROJECT Site, the Company will pay the reasonable and necessary costs incurred by the NAMED INSURED to re-erect a TOWER CRANE if necessary to complete the INSURED PROJECT.

This Extension of Coverage does not apply to and shall not modify, amend or alter any other Extension of Coverage or Delay in Opening coverage insured by this Policy and such coverage is expressly excluded herein.

21. Pollution or Contamination Clean-Up

The Company will pay necessary and reasonable expenses incurred by the NAMED INSURED to clean-up and remove CONTAMINANTS OR POLLUTANTS from land or water confined to the INSURED PROJECT site(s) if the release, discharge or dispersal is caused by or results in direct physical LOSS that occurs during the Policy period, and which is not excluded by this Policy.

The Company will not pay for the costs to test for, monitor or assess the existence, concentration or effects of CONTAMINANTS OR POLLUTANTS except for testing which is performed in the course of clean-up and removal of the CONTAMINANTS OR POLLUTANTS from the land or water.

No liability shall exist under this provision unless such expenses are reported to the Company within 180 days of the date of direct physical LOSS.

22. Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria

A. The coverage described below in B. only applies when FUNGUS, wet rot, dry rot or bacteria results directly from an OCCURRENCE that is covered by this Policy, which takes place during the policy period and only if all reasonable means were used to save and preserve the property from further LOSS at the time of and after that OCCURRENCE.

B. Under this Extension of Coverage, the Company will pay for:

©Chubb. 2016. All rights reserved.



1. Direct physical LOSS to insured property at the INSURED PROJECT caused by FUNGUS, wet rot, dry rot or bacteria, including the cost of removal of the FUNGUS, wet rot, dry rot or bacteria;

2. The cost to tear out and replace any part of a building or other insured property as needed to gain access to FUNGUS, wet rot, dry rot or bacteria covered by this Endorsement; and

3. The cost of testing performed after removal, repair, replacement or restoration of the damaged insured property is completed, provided there is a reason to believe that FUNGUS, wet rot, dry rot or bacteria are present.

C. The coverage provided herein does not increase any other applicable Limit of Insurance or Sub-limit of Insurance for the INSURED PROJECT. If a particular OCCURRENCE results in LOSS by FUNGUS, wet rot, dry rot or bacteria, as well as other LOSS, the Company will not pay more, for the total of all LOSS, than the applicable Limit of Insurance per OCCURRENCE stated on the Declarations.

If there is covered LOSS to the INSURED PROJECT, not caused by FUNGUS, wet rot, dry rot or bacteria, loss payment will not be limited by the terms of this Extension of Coverage, except to the extent that FUNGUS, wet rot, dry rot or bacteria causes an increase in the LOSS. Any such increase in the LOSS will be subject to the terms of this Extension of Coverage.

## PART D
## EXCLUSIONS

### Property Excluded

This Policy does not insure:

1. Land and land values and the value of cut, fill and backfill materials existing at the INSURED PROJECT site prior to project commencement; however, to the extent included in the contract bid documents and declared for premium purposes, the value of fill and backfill materials purchased for use in the completion of the INSURED PROJECT is not excluded.

   Notwithstanding the foregoing, labor and material charges incurred to move, remove, place or otherwise handle cut, fill and backfill materials, whether insured or uninsured in the foregoing, are covered to the extent such charges are included in the contract bid documents and declared for premium purposes;

2. Construction tools and equipment;

3. Vehicles or equipment licensed for highway use, watercraft or aircraft;

4. Railroad rolling stock;

5. Water, animals of any kind, standing timber, and growing crops;

6. Accounts, bills, currency, stamps, deeds, evidence of debt, checks, money, securities, or other property of a similar nature;

7. EXISTING PROPERTY at the INSURED PROJECT site, unless the value of same is declared to the Company and if a Sub-limit of Insurance is shown on the Declarations;

 ©Chubb. 2016. All rights reserved.



8. Property at locations other than at the INSURED PROJECT site, except Property that is in Transit or at Temporary Off-site Storage and Off-site Staging Areas if a Sub-limit of Insurance is shown on the Declarations;

9. Prototype, developmental, used machinery and equipment or any catalysts while undergoing any form of TESTING;

10. Refractory linings and brickwork during TESTING from the time of the first application of heat, unless LOSS directly results from physical LOSS to other insured property by an insured peril;

11. TRANSMISSION AND DISTRIBUTION LINES outside of the INSURED PROJECT site.

12. Any property while located at any site which stores, processes or otherwise handles or makes use of radioactive materials unless reported to and accepted by the Company. The foregoing shall not apply to locations or property making use of radioactive isotopes contained within equipment used for diagnostic or testing purposes.

## Excluded Causes of LOSS

**This Policy does not insure LOSS caused directly or indirectly by any of the following, and such LOSS is excluded regardless of any other cause or event that contributes concurrently, or in sequence to the LOSS:**

1. A. Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    1. By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

    2. By military, naval, or air forces; or

    3. By an agent of any such government, power, authority, or forces; it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion will be conclusively presumed to be such a hostile or warlike action by such government, power, authority or forces;

    B. Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such occurrence.

2. LOSS, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on any NAMED INSURED at the order of any government agency, court or authority arising from any cause whatsoever, except physical destruction of insured property by order of public authority to prevent spread of fire or explosion.

3. Nuclear reaction or radiation or radioactive contamination however caused. If fire ensues, liability is specifically assumed for direct physical LOSS by such ensuing fire, but not including any direct physical LOSS due to nuclear reaction, nuclear radiation or radioactive contamination.

4. Dishonest or criminal act committed by:

    A. the NAMED INSURED or of any of the NAMED INSURED's partners, employees, directors, trustees, or authorized representatives;

 ©Chubb. 2016. All rights reserved.



B. a manager or a member, or their partners, employees, directors or authorized representatives, if the NAMED INSURED is a limited liability company;

C. anyone else with an interest in the insured property, or their employees or representatives; or

D. anyone else to whom the insured property in entrusted for any purpose.

This Excluded Cause of LOSS applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

This Excluded Cause of LOSS does not apply to insured property that is entrusted to others who are carriers for hire or to acts of destruction by employees of the NAMED INSURED.  But theft by employees of the NAMED INSURED is excluded.

5.   Shortage found upon taking inventory.

6.   Mysterious Disappearance.

7.   Infestation, disease, freeze, drought and hail, weight of ice or snow or any damage caused by insects, vermin, rodents or animals, but only as respects Trees, Shrubs and Plants.

8.   Consequential loss, damage or expense of any kind or description including but not limited to loss of market or delay, liquidated damages, performance penalties, penalties for non-completion, delay in completion, or non compliance with contract conditions, whether caused by a peril insured or otherwise;

This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Contract Penalty nor shall it exclude Delay in Opening Coverage when endorsed to this Policy.

9.   LOSS covered under any written or implied guarantee or warranty by any manufacturer or supplier.

10.   Asbestos Hazard:

A. Asbestos material removal unless the asbestos itself is damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective systems.

B. Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos material.

C. Any governmental direction or request declaring that asbestos material present in or part or utilized on any undamaged portion of the insured property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

11.   LOSS caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS OR POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this Policy.

Nevertheless, if fire is not excluded from this Policy and a fire arises directly or indirectly from the release, discharge, escape or dispersal of CONTAMINANTS OR POLLUTANTS, any covered LOSS which arises directly from that fire shall (subject to the terms, conditions and limitations of this Policy) be insured.

 ©Chubb. 2016. All rights reserved.



This Excluded Cause of LOSS shall not apply when LOSS is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, vandalism, malicious mischief, smoke; vehicle impact, windstorm or hail. This Excluded Cause of LOSS shall also not apply when LOSS is directly caused by leakage or accidental discharge from automatic fire protective systems.

12. The increased cost to comply with the enforcement of any ordinance or law that:

A. Requires the demolition of parts of undamaged insured property;

B. Regulates the construction or repair of damaged insured property;

This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Ordinance or Law.

13. LOSS, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of:

A. ELECTRONIC DATA by any cause whatsoever (including but not limited to COMPUTER VIRUS); and/or

B. ELECTRONIC MEDIA caused by or resulting from the LOSS, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of ELECTRONIC DATA;

regardless of any other cause or event that contributes concurrently or in any sequence to the LOSS, damage, destruction, distortion, erasure, corruption, alteration, diminishment in value, or loss of use or usefulness of ELECTRONIC DATA or ELECTRONIC MEDIA.

This Excluded Cause of LOSS does not apply to LOSS of ELECTRONIC DATA or ELECTRONIC MEDIA caused by or resulting from the perils of Fire, Explosion, Riot and Civil Commotion, Vehicles and Aircraft Impact or Collision, Sonic Boom, Sprinkler Leakage, Sinkhole Collapse, FLOOD, EARTH MOVEMENT or Volcanic Action, if, and to the extent, such peril causing the LOSS is otherwise covered by this Policy.

14. Any LOSS or expense consisting of, caused by, contributed to, or aggravated by FUNGUS, wet rot, dry rot or bacteria, whether directly or indirectly the result of an insured peril. This includes, but is not limited to, the cost for investigation, testing, remediation services, extra expense or business interruption. Such LOSS is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the LOSS.

If LOSS otherwise covered by this Policy occurs, and the cost of removal of debris is increased due to the presence of FUNGUS, wet rot, dry rot or bacteria, this Policy will only be liable for the costs of debris removal which would have been incurred had no such factors been present in, on, or about the insured property to be removed.

This Excluded Cause of LOSS does not apply to the extent coverage is provided in the EXTENSIONS OF COVERAGE – Limited Coverage for FUNGUS, Wet Rot, Dry Rot or Bacteria.

15. FLOOD, but if LOSS by fire or explosion results, the Company will pay for that resulting LOSS. This exclusion does not apply to Property in Transit.

16. EARTH MOVEMENT, but if LOSS by fire, explosion, or sprinkler leakage results, the Company will pay for that resulting LOSS. This exclusion does not apply to Property in Transit.

17. Cost of Making Good:

 ©Chubb. 2016. All rights reserved.



The costs that would have been incurred to rectify any of the following had such rectification been effected immediately prior to the LOSS:

A.  Fault, defect, error, deficiency or omission in design, plans, specifications, engineering or surveying;

B.  Faulty or defective workmanship, supplies or material;

However, if direct physical LOSS by an insured peril ensues, then this Policy will provide cover for such ensuing LOSS only.

For the purpose of this Policy and not merely this Excluded Cause of LOSS, insured property, or any portion thereof, shall not be regarded as damaged solely by virtue of the existence of any condition stated under A. or B. above.

**This Policy does not insure LOSS caused by any of the following, unless direct physical LOSS by an insured peril ensues and then this Policy insures only such ensuing direct physical LOSS:**

1.  Corrosion, decay, deterioration, erosion, evaporation, inherent vice, latent defect, leakage, loss of weight, rust, shrinkage, wear and tear or any quality in property which causes it to damage or destroy itself.

2.  Normal settling, shrinking, cracking, expansion or contraction.

3.  Dryness or dampness of atmosphere.

4.  Extremes or changes in temperature.

## PART E
## POLICY CONDITIONS

These Policy Conditions apply to the entire Policy, including any endorsements attached to or made part of this Policy.  However, to the extent that these Policy Conditions are in conflict with any State Changes or State Amendatory endorsements attached to or made part of this Policy, the conditions of the State Changes or State Amendatory endorsements shall take precedence.

1.  Additional Insureds

    To the extent required by any written contract or subcontract for the INSURED PROJECT, and then only as their respective interests may appear, all owners, all contractors and subcontractors of every tier of the INSURED PROJECT, and any other individual or entity specified in such written contract or subcontract, are recognized as Additional Insureds hereunder.  As respects architects, engineers, manufacturers and suppliers, their interest is limited to their site activities only.

2.  LOSS Payable

    LOSS, if any, shall be adjusted with and made payable to the NAMED INSURED, or as per order of the NAMED INSURED, whose receipt shall constitute a release in full of all liability under this Policy with respect to such LOSS.

3.  Term of Insurance

©Chubb. 2016. All rights reserved.



Coverage provided hereunder shall attach as of the date shown on the Declarations and shall continue in full force and effect until:

A. the expiration date shown on the Declarations,

B. final acceptance of the INSURED PROJECT by the owner,

C. abandonment of the INSURED PROJECT by the NAMED INSURED, or

D. the expiration of the NAMED INSURED's interest in the INSURED PROJECT;

whichever first occurs.

**Permission to Occupy**

The owner may occupy the INSURED PROJECT for the purpose originally intended without the Company's written consent. The NAMED INSURED agrees that all planned fire protection and security systems will be installed, activated and operational prior to and during such occupancy.

4. Premium

A. Deposit Premium: The premium stated on the Declarations is a deposit premium and shall be adjusted in accordance with Paragraph 4.C. Premium Adjustment. The deposit premium shall be due and payable within thirty (30) days of the effective date shown or per the date noted on the invoice, whichever is earlier.

B. Reporting Provisions: Not later than thirty (30) days after the expiration, cancellation, or any requested extension of this Policy, the NAMED INSURED shall report to the Company the total completed value of all property including, but not limited to, all wages, expenses, materials, supplies, equipment and such other charges, all whether provided by the owner, contractor or others, which became a part of or was expended in the INSURED PROJECT.

C. Premium Adjustment:

1. The final earned premium for this Policy shall be computed by applying the rates used for the purpose of computing the deposit premium to the actual term of coverage provided and the total completed value declared in accordance with Paragraph 4. B. Reporting Provisions.

2. If the premium so calculated shall differ from the deposit premium, such difference shall be due and payable to the NAMED INSURED or the Company, as the case may be.

3. If the final completed values reported to the Company for the INSURED PROJECT vary by no more than 5% from the estimated completed values at inception, then the Company and the NAMED INSURED agree that no Premium Adjustment will occur. Any variation in completed values greater than 5% will require a Premium Adjustment per 1. and 2. above using the estimated completed value of the INSURED PROJECT at inception as the base.

D. Minimum Earned Premium:

1. If the NAMED INSURED cancels this Policy before the expiration date of the Policy, the Company will charge a minimum earned premium as stated on the Declarations. If the Company cancels the Policy, no minimum earned premium applies.

 ©Chubb. 2016. All rights reserved.



2.  If the NAMED INSURED cancels the Policy, the Company will calculate the return premium as determined by this Clause 4. Premium, the Policy Reporting Endorsement, if any, and amendatory endorsements, if any, attached to this Policy. After the Company determines the return premium, the Company will subtract it from the Policy term premium to determine the earned premium.

3.  The Company will then compare the earned premium to the minimum earned premium stated on the Declarations. If the earned premium is less than the minimum earned premium, the Company will return to the NAMED INSURED the difference between the Policy term premium and the minimum earned premium. If the earned premium is more than the minimum earned premium, the Company will return to the NAMED INSURED the difference between the Policy term premium and the earned premium as determined by this Clause 4. Premium, the Policy Reporting Endorsement, if any, and amendatory endorsements, if any, attached to this Policy.

5.  Deductibles

The Company will adjust all direct physical LOSS arising out of any one OCCURRENCE as one LOSS. The Company will not pay for direct physical LOSS in any one OCCURRENCE until the amount of the adjusted direct physical LOSS exceeds the applicable deductible stated on the Declarations. The Company will then pay the amount of the direct physical LOSS in excess of the applicable deductible.

Where a percentage deductible is shown on the Declarations, the deductible shall be the greater of the dollar amount shown, or the stated percentage of the total insured values at the INSURED PROJECT site or sites at the time and date of the LOSS, unless a maximum deductible is listed.

In the event that more than one deductible shown on the Declarations, or provided in any endorsement, shall apply to covered direct physical LOSS in any one OCCURRENCE, only the largest deductible shall be applied.

However, if this Policy is extended to provide coverage for Delay in Opening, the deductible stated on the applicable endorsement will be applied separately and in addition to the deductible(s) for the other coverages provided in this Policy.

6.  Valuation

At the time and place of direct physical LOSS, the basis of adjustment of a claim, unless otherwise endorsed herein, shall be as follows:

A.  Property Under Construction – The cost to repair or replace the insured property lost or damaged with material of like kind and quality, less betterment, including contractor's reasonable profit and overhead not exceeding the percentages in the original contract. If the insured property is not repaired or replaced then direct physical LOSS shall be settled on the basis of ACTUAL CASH VALUE.

B.  EXISTING PROPERTY - The Company will pay the least of the following for direct physical LOSS to EXISTING PROPERTY:

1.  The ACTUAL CASH VALUE of the EXISTING PROPERTY;
2.  The cost of reasonably restoring the EXISTING PROPERTY to its condition immediately
    prior to the LOSS;
3.  The cost of replacing the EXISTING PROPERTY with substantially identical property

 ©Chubb. 2016. All rights reserved.



unless replacement with substantially identical property is impossible or unnecessary. In such case, FUNCTIONAL REPLACEMENT COST would apply.

C. Property of Others (Including Items Supplied by the Owner) – If Property of Others is new, the cost to repair or replace the insured property lost or damaged with material of like kind and quality, less betterment. If Property of Others is not new then, the Owner's cost or ACTUAL CASH VALUE, whichever is less.

If the Property of Others is not repaired or replaced then direct physical LOSS shall be settled on the basis of ACTUAL CASH VALUE.

D. TEMPORARY STRUCTURES – The cost to repair or replace the insured property lost or damaged with material of like kind, quality and condition but in the event the insured property is not repaired or replaced recovery will not exceed the ACTUAL CASH VALUE.

E. Valuable Papers and Records - The cost to reproduce the insured property with other property of like kind and quality including the cost of gathering or assembling information from back up data if replaced, or if not replaced, at the value of blank material.

F. ELECTRONIC MEDIA or ELECTRONIC DATA - The cost of the blank media, plus the costs of copying or restoring ELECTRONIC DATA from back-up or from originals of a previous generation, not including research and engineering or the costs or expense of recreating, gathering or assembling such ELECTRONIC DATA.

This Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Named Insured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled. If not repaired, replaced or restored, ELECTRONIC MEDIA shall be valued at the cost of the blank media.

G. Trees, Shrubs and Plants - The cost to replace with property of like kind and quality plus the proper proportion of labor expended if such damage occurs after installation.

H. Office and Construction Trailers/Semi-trailers and their Contents – If not more than 5 years old as of the expiration date of this Policy, based on the manufacturer's model year, and the NAMED INSURED repairs or replaces the insured property, the least of the following shall apply:

1. The cost to replace the lost or damaged insured property, without deduction for depreciation, with new property of comparable quality and utility;

2. The amount the NAMED INSURED actually spends to repair or replace the lost or damaged insured property.

If the insured property is more than 5 years old or the NAMED INSURED does not actually repair or replace the insured property within a reasonable period of time after the date of LOSS, the Company will pay the ACTUAL CASH VALUE

The Company will pay for direct physical LOSS to insured property by determining its REPLACEMENT COST, provided that the NAMED INSURED actually repairs or replaces the lost or damaged insured property, or begins to repair the damaged insured property, within 24 months from the date of direct physical LOSS; otherwise, the Company will pay for direct physical LOSS to insured property by determining its ACTUAL CASH VALUE.

7. Cancellation

A. This Policy may be cancelled by the NAMED INSURED by mailing to the Company written notice stating when, thereafter, such cancellation shall be effective. The

 ©Chubb. 2016. All rights reserved.



Company may cancel this Policy by mailing to the NAMED INSURED at the address shown in the Policy written notice stating when, not less than 60 days thereafter, such cancellation will be effective. In the event of non-payment, the Company shall give 15 days notice. The mailing of notice as aforementioned shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the Policy period. Delivery of such written notice either by the NAMED INSURED or by the Company shall be equivalent to mailing.

B.   If the NAMED INSURED or the Company cancels, earned premiums shall be computed in accordance with Part E.4.C. Premium Adjustment and Part E.4.D. Minimum Earned Premium.

C.   Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The Company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the NAMED INSURED.

8.   Inspection and Audit

While this Policy is in effect, the Company may, at any reasonable time, inspect the NAMED INSURED's property and operations. However, any recommendations or information provided as a result of such inspection(s) is not intended as a substitute for advice from a safety expert or legal counsel the NAMED INSURED may retain for their intended purpose(s). It is not intended to satisfy any legal duty the NAMED INSURED may have to provide a safe premises, workplace, product or operation.

The Company may also examine and audit the NAMED INSURED's books and records at any reasonable time during the Policy period, and within one year after the final termination of the Policy, as long as they relate to the subject matter of this Policy.

9.   Assignment

The NAMED INSURED agrees not to assign and/or transfer any legal rights or interests in the Policy without the Company's written consent.

10.   Abandonment

There will be no abandonment of any insured property to the Company.

11.   Appraisal

If the NAMED INSURED and the Company fail to agree on the amount of the LOSS, each, upon written demand of either the NAMED INSURED or Company made within sixty (60) days after receipt of proof of LOSS by the Company, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the NAMED INSURED or the Company, such umpire shall be selected by a judge of a court of record in the jurisdiction in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the LOSS based on the Valuation conditions within the Policy. If the appraisers agree, their written agreement shall determine the amount of LOSS and shall be paid by the Company within thirty (30) days thereafter. If the appraisers fail to agree, they shall submit their differences to the umpire. The umpire shall then submit a written award resolving such differences. Such award shall determine the amount of the LOSS and shall be paid by the Company within thirty (30) days thereafter.

 ©Chubb. 2016. All rights reserved.



The NAMED INSURED and the Company shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. The Company shall not be held to have waived any of its rights by any act relating to appraisal.

12. In Case of LOSS

    A. Notice of OCCURRENCE:

        The NAMED INSURED will, as soon as practicable, report in writing to the Company every OCCURRENCE that may give rise to a claim under this Policy.

    B. Proof of LOSS:

        The NAMED INSURED will as soon as practicable, file with the Company a signed and sworn detailed proof of LOSS.

    C. Payment of LOSS:

        All adjusted claims, including partial payments thereon will be due and payable no later than thirty (30) days after presentation and acceptance of proof of LOSS or partial proof of LOSS, as the case may be, by this Company or its appointed representative.

13. Other Insurance

Except as stated in the Contributing Insurance and Excess Insurance articles, if there is other insurance which is issued by another valid policy or policies of insurance, whether primary or excess, whether collectible or not, this Policy will apply as excess insurance and will not contribute with such other insurance, nor shall the Company be liable to make any payment in connection with any such portion of a claim or suit.

14. Contributing Insurance

Permission is granted for other policies written upon the same plan, conditions, and provisions as those contained herein.

This Policy will contribute to the total of each LOSS otherwise payable herein to the extent of the participation of this Policy in the total Limit of Insurance, as provided by all policies written upon the same plan, conditions, and provisions as those contained in this Policy.

The adjustment of losses by any contributing insurance company is not binding on any other contributing insurance company.

15. Excess Insurance

Permission is granted the NAMED INSURED to have excess insurance over the Limit of Insurance set forth in this Policy without prejudice to this Policy, nor will the existence of such insurance, if any, reduce any liability under this Policy.

16. Pair and Set

    A. In the event of LOSS to any insured article or articles which are part of a pair or set, the measure of LOSS to such article or articles will be a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or

 ©Chubb. 2016. All rights reserved.



articles, but in no event will such LOSS be construed to mean total LOSS of the pair or set, or

B.   In the event of LOSS to any part of insured property consisting, when complete for use, of several parts, the Company will only be liable for the value of the part lost or damaged.

17.   Recovery or Salvage

Any recovery or salvage will apply as if recovered or received prior to the LOSS settlement and the LOSS will be readjusted accordingly, except for:

A.   proceeds from subrogation and other insurance recovered or received after a LOSS settlement under this Policy;

B.   any recovery from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company.

18.   Reinstatement

With the exception of LOSS caused by insured perils which are subject to Annual Aggregate Sub-limits of Insurance, any LOSS hereunder will not reduce the limits available under this Policy.

19.   Subrogation

If the Company pays a claim under this Policy, it will be subrogated, to the extent of such payment, to all the NAMED INSURED's rights of recovery from other persons, organizations and entities. The NAMED INSURED will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The Company will have no rights of subrogation against:

A.   any person or entity, which is an Additional Insured;

B.   any other person or entity, against which the NAMED INSURED has waived its rights of subrogation in writing before the time of LOSS.

Notwithstanding the foregoing, it is a condition of this Policy that the Company shall be subrogated to all the NAMED INSURED's rights of recovery against:

A.   Any Architect or Engineer, whether or not a NAMED INSURED or Additional Insured, for any LOSS arising out of the performance of professional services in their capacity as such and caused by any error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and;

B.   Any manufacturer or supplier of machinery, equipment or other property, whether or not a NAMED INSURED or Additional Insured, for the cost of making good any LOSS which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

The NAMED INSURED will act in concert with the Company and all other interests concerned in the exercise of such rights of recovery.

If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery, will accrue first to the Company in proportion to their respective interests. Any excess of this amount will be remitted to the NAMED INSURED. If



there is no recovery, the interests instituting the proceedings will bear the expense of the proceedings proportionately.

The NAMED INSURED will do nothing after LOSS to prejudice such rights of subrogation.

20.    Misrepresentation & Fraud

This Policy shall be void if the NAMED INSURED has intentionally concealed or misrepresented any material fact(s) or circumstance(s) concerning this insurance or the subject thereof, or in case of any fraud, attempted fraud or false swearing by the NAMED INSURED concerning any matter relating to this insurance or the subject thereof, whether before or after a LOSS.

21.    Legal Action Against the Company

No one may bring a legal action against the Company under this Policy unless:

A. There has been full compliance with all the conditions of this Policy; and

B. The action is brought within 2 years after the NAMED INSURED first has knowledge of the direct physical LOSS.

22.    Benefit to Bailee

The Policy will not inure, directly or indirectly, to the benefit or any carrier or bailee.

23.    Coverage Territory

This Policy covers insured property within the United States of America, including the District of Columbia and property in inland transit from Canada; except that this Policy will not cover Property in Transit by water or air to and from Alaska or to and from Hawaii.

24.    Certificates of Insurance

Any Certificate of Insurance issued in connection with this Policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said Certificate of Insurance. This Policy may only be modified by endorsement issued by the Company.

25.    Statutes

If any of the Articles herein stated conflict with the laws or statutes of any jurisdictions in which this Policy applies, the same is amended to conform to such laws or statutes.

26.    Observance of Conditions

Full compliance with all terms and conditions of this Policy by the NAMED INSURED shall be a condition precedent to any liability of the Company to make payment for LOSS under this Policy.

27.    Increased Hazard

If there is a material increased hazard in the risk, change in project scope or change in project principals, the NAMED INSURED shall give notice in writing to the Company within 30 days of the NAMED INSURED's knowledge of the same..  The Company shall have the right, but not the obligation, to modify the terms of insurance in accordance with the terms and conditions that would apply to the material increased hazard.

   ©Chubb. 2016. All rights reserved.



28. Examination Under Oath

The NAMED INSURED shall submit and, so far as is within their power, shall cause all other persons to submit, to examination or examinations under oath by any persons named by the Company relative to any and all matters in connection with a claim, and shall produce for examination all books of accounts, bills, invoices, and other vouchers or certified copies thereof if originals are lost, at such reasonable time and place as may be designated by the Company or its representatives as often as the Company deems necessary, and shall permit extracts and copies thereof to be made.

29. Brands & Trademarks

In any case of LOSS by an insured peril to insured property bearing a brand, trademark or label, the Company may take all or any part of the insured property at any agreed or appraised value. If so, the NAMED INSURED may, at its own expense:

A. Stamp salvage on the insured property or its container, if the stamp will not physically damage the insured property; or

B. Remove the brand, trademark or label if doing so will not physically damage the insured property. The NAMED INSURED must re-label the insured property or its container to comply with the law.

30. Protection of Insured Property

The NAMED INSURED will take reasonable steps to protect, recover or save the insured property and minimize any further or potential LOSS when the insured property has sustained direct physical LOSS by an insured peril. The acts of the NAMED INSURED or the Company in protecting, recovering or saving the insured property will not be considered a waiver or an acceptance of abandonment. The NAMED INSURED and the Company will bear the reasonable expense incurred proportionate to their respective interests under this Policy.

31. Mortgage Holders

The entities listed on the Declarations and designated as a Mortgage Holder are added to this Policy for the INSURED PROJECT covered by this Policy, subject to the following terms and conditions:

The term "mortgage holder" includes a trustee.

A. The Company will pay for LOSS, if any, to each mortgage holder shown in the mortgage holder schedule in their order of precedence, as interests may appear.

B. The mortgage holder has the right to receive LOSS payment even if the mortgage holder has started foreclosure or similar action on the INSURED PROJECT.

C. If the Company denies a claim due to the acts of the NAMED INSURED or because the NAMED INSURED has failed to comply with the terms of this Policy, the mortgage holder will still have the right to receive LOSS payment if the mortgage holder:

1. Pays any premium due under this Policy at the request of the Company if the NAMED INSURED has failed to do so.

2. Submits a signed, sworn proof of LOSS within 60 days after receiving notice from the Company of the NAMED INSURED'S failure to do so; and

3. Has notified the Company of any change in ownership, occupancy, or substantial change in risk known to the mortgage holder.

All terms of this Policy will then apply directly to the mortgage holder.

 ©Chubb. 2016. All rights reserved.



D. If the COMPANY pays the mortgage holder for any LOSS and denies payment to the NAMED INSURED because of their acts or because they have failed to comply with the terms of this Policy:

    1. The mortgage holder's rights under the mortgage will be transferred to the Company to the extent of the amount paid; and

    2. The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At the option of the Company, the Company may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, the mortgage and note will be transferred to the Company and the NAMED INSURED will pay the remaining mortgage debt to the Company.

E. If the Company cancels this Policy, the Company will endeavor to give written notice to the mortgage holder at least:

    1. 15 days before the effective date of cancellation, if cancelled for non-payment of premium; or

    2. 45 days before the effective date of cancellation, if cancelled for any other reason.

The Company's failure to provide notice of cancellation to the mortgage holder will not invalidate the cancellation.

F. If the Company does not renew the Policy, the Company will endeavor to give written notice to the mortgage holder at least 45 days before the expiration date of this Policy. The Company's failure to provide notice to the mortgage holder will not invalidate the non-renewal.

32.    **Loss Payees**

The entities listed on the Declarations and designated as Loss Payee are added to this Policy for the INSURED PROJECT covered by this Policy, subject to the following terms and conditions:

The Company will adjust a LOSS with the NAMED INSURED shown on the Declarations and the Company will pay the NAMED INSURED, and the Loss Payee(s), up to their interest in insured property, the amount the Company owes, if anything.

33.    **Unpacked Property**

The NAMED INSURED shall inspect all items that are included in the values to be insured for the INSURED PROJECT covered by this Policy upon arrival at the INSURED PROJECT site.

In the case of unpacked property where LOSS is evident, such LOSS is excluded under this Policy, except to the extent it is indemnified under the terms provided by the Property in Transit Extension of Coverage.

In the case of packed property (which is intended to remain in its packing until a later date after arrival at the INSURED PROJECT site), the packing is to be inspected and in the event of any visible signs of LOSS, the property contained therein is to be promptly unpacked and inspected. Any LOSS to such property which is thus discovered is excluded under this Policy, except to the extent it is indemnified under the terms of the Property in Transit Extension of Coverage.

In the event the packing of the property manifests no sign of LOSS and the property is therefore temporarily left packed, any LOSS which is discovered when the property is unpacked will be deemed to have occurred during transit unless there is clear evidence from the nature of the LOSS that it could only have occurred after arrival at the INSURED PROJECT site.

However, if it is not possible to determine when the LOSS occurred and such LOSS is not insured under the Extensions of Coverage for Property in Transit or Temporary Off-site Storage and Staging Areas, the Company will pay for fifty (50%) percent of the indemnity, otherwise due hereunder, as if the LOSS had occurred during the Policy Period, subject to the deduction of fifty (50%) percent of the Deductible.

 ©Chubb. 2016. All rights reserved.



# PART F
# DEFINITIONS

The following definitions will be applied in the interpretation of certain wording used herein

1.   **ACTUAL CASH VALUE**

The replacement cost at the time of LOSS, of the insured property damaged or destroyed, less depreciation.

2.   **COMPUTER VIRUS**

Instructions, code, applications or any software program that has the ability or is suspected to have the ability to damage, destroy, erase, corrupt, alter, or prevent access to ELECTRONIC DATA, ELECTRONIC MEDIA or COMPUTERS or to disrupt or interfere with the operations of COMPUTERS.

3.   **COMPUTERS**

Includes but is not limited to mainframes, servers, workstations and portable computers, personal information managers, wide and local area network hardware, electronic and electromechanical equipment, data processing equipment, electronic controls for machinery, electronically programmed memory chips, and electronically controlled communication equipment.

4.   **CONTAMINANTS OR POLLUTANTS**

Any material which, after its release, can cause or threaten damage to human health or human welfare or which can cause or threaten damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, any solid, liquid, gaseous or thermal irritant or contaminant including vapor, fumes, acids, soot, alkalis, virus, chemicals and waste, or any hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act, or as designated by the US Environmental Protection Agency.

5.   **EARTH MOVEMENT**
All earthquake, landslide, mudslide, mudflow, rock fall, tsunami, tectonic or seismic sea waves, volcanic eruption, earth sinking (other than sinkhole collapse), rising, shifting, subsidence or other EARTH MOVEMENT, whether observable or not observable, and whether man-made or caused by natural phenomena.

6.   **ELECTRONIC DATA**

Facts, concepts, information or data, including compilations thereof, in a form useable or intended for use or processing by COMPUTERS or for storage on ELECTRONIC MEDIA. ELECTRONIC DATA includes but is not limited to files, programs, applications, operating systems, and other coded instructions for the processing, calculation and storage of facts, concepts and information by COMPUTERS.

7.   **ELECTRONIC MEDIA**

Any physical device that holds, stores, contains or transfers ELECTRONIC DATA, and includes but is not limited to disks, drives, films, tapes, records, drums, or cells.

 ©Chubb. 2016. All rights reserved.



8.   **EXISTING PROPERTY**

Buildings or permanent structures, including equipment used to maintain or service the buildings or structures that existed prior to the beginning of the INSURED PROJECT.

9.   **FLOOD**

A general and temporary condition during which the surface of normally dry land is partially or completely inundated, which arises from:

A.   Rain and resultant runoff; or

B.   The rising, overflow or breach of any boundary of a natural or man-made body of water; or

C.   Non-tectonic or seismic sea waves, tide or tidal waters, storm surge, or spray from any of these; whether driven by wind or not; or

D.   The failure of a cofferdam or similar structure intended to hold water back from an area of construction; or

E.   Unexpected accumulation of water caused by subsurface seepage or subsurface leakage.

As respects piles and other insured property designed to be used in water and purposely placed or stationed in lakes, rivers, streams, harbors or other bodies of water, any LOSS that could be deemed LOSS caused by WATER DAMAGE or LOSS caused by FLOOD under this policy, shall be deemed LOSS caused by FLOOD, and all terms and conditions herein shall apply as if the LOSS were caused by FLOOD.

FLOOD does not include the accumulation of water from any source on a roof or other surface of a building, dwelling or structure.

10.   **FUNCTIONAL REPLACEMENT COST**

The cost to replace insured property with similar property intended to perform the same function when replacement with substantially identical property is impossible or unnecessary.

11.   **FUNGUS**

Any type or form of FUNGUS, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

12.   **TESTING**

Any start-up, commissioning or other forms of testing, including the checking of any plant or machinery or a component part thereof under load or operational conditions, including the use of feedstock or other materials for processing, or other media to simulate working conditions.

TESTING also includes but is not limited to any start-up, commissioning or other forms of testing of building or civil construction systems, such as electric, heating, ventilation, air conditioning, sprinklers, water piping, plumbing, gas lines, air conditioning lines, elevators, escalators, electronic tolling, life safety or lighting.

13.   **TESTING PERIOD**

©Chubb. 2016. All rights reserved.



That period beginning with the introduction into the insured property of feedstock or similar media for processing and handling, or the first firing of fuel(s), whichever first occurs. The TESTING PERIOD shall continue thereafter whether or not such testing, commissioning or startup is continuous or intermittent and terminate on the expiration of this Policy.

14.    INSURED PROJECT

The work which the NAMED INSURED is contractually obligated to perform in accordance with the contract documents, being more fully described and located as set forth on the Declarations.

15.    LOSS

Accidental loss or damage.

16.    NAMED INSURED

The persons or companies identified on the Declarations of this Policy.

17.    NAMED WINDSTORM

An intense tropical weather system with a well-defined circulation and maximum sustained winds of at least 39 mph or 63 km/hr that is named by the National Oceanic and Atmospheric Administration (NOAA), including any of NOAA's organizations, such as the National Weather Service or the National Hurricane Center.

18.    OCCURRENCE

All LOSS attributable directly or indirectly to one originating cause, event, incident or repeated exposure to the same originating cause, event or incident, or to one series of similar originating causes, events, incidents or repeated exposures to the same originating cause, event or incident first occurring in the Policy period. All such LOSS will be treated as one OCCURRENCE , unless a specific period of time is included in this Policy. The most the Company will pay for LOSS in any one OCCURRENCE is the applicable Limit of Insurance shown on the Declarations.

As respects the perils of strike, riot, civil commotion, vandalism and malicious mischief, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy. The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap. Such strike, riot, civil commotion, vandalism or malicious mischief shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of EARTH MOVEMENT, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy. The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap. Such EARTH MOVEMENT shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of NAMED WINDSTORM, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy. The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two periods shall overlap. Such NAMED WINDSTORM shall be deemed to be a single OCCURRENCE within the meaning of this Policy.

As respects the peril of FLOOD, OCCURRENCE shall mean all LOSS arising during a continuous period of seventy-two (72) hours during the term of this Policy. The NAMED INSURED may elect the moment when the seventy-two (72) hour period begins, but no two such periods shall overlap. Such FLOOD shall be deemed to be a single OCCURRENCE within the meaning of this Policy.



The Company shall not be liable for any such LOSS first occurring before the effective date and time or first occurring after the expiration date and time of this Policy.

19.   REPLACEMENT COST

The cost to repair or replace the insured property lost or damaged at the time and place of direct physical LOSS with material of like kind and quality, less betterment.

20.   TEMPORARY STRUCTURES

Cribbing, scaffolding, shoring, fences, construction forms and other similar structures on the INSURED PROJECT site, but TEMPORARY STRUCTURES does not include construction tools, equipment or storage structures.

21.   TOWER CRANE

A crane with a fixed vertical mast that is topped by a rotating boom and equipped with a winch for hoisting and lowering loads.

22.   TRANSMISSION AND DISTRIBUTION LINES

Transmission and distribution lines, poles, towers and all equipment attached or affixed thereto, including supporting structures.

23.   WATER DAMAGE

All water damage, except LOSS caused by or resulting from the peril of FLOOD.

©Chubb. 2016. All rights reserved.

# NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL
## EXCLUSION ENDORSEMENT

| Named Insured<br>550 Seabreeze Development LLC | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>IMC | Policy Number<br>I08881479 001 | Policy Period<br>06/01/2017 to  12/15/2017 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

*This endorsement modifies insurance provided under the following:*

**BOILER AND MACHINERY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

The following exclusions are added to your Policy or Coverage Part.

This insurance does not apply to:

**A.** Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

**B.** Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

**C.** If this endorsement is attached to a Commercial Inland Marine Policy or Coverage Part, the term loss or damage is changed to Loss.

©Chubb. 2016. All rights reserved.

## PROTECTIVE SAFEGUARDS ENDORSEMENT

| Named Insured<br>550 Seabreeze Development LLC | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>IMC | Policy Number<br>I08881479 001 | Policy Period<br>06/01/2017 to 12/15/2017 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

### A. THEFT, VANDALISM AND MALACIOUS MISCHIEF COVERAGE

As a condition precedent to theft, vandalism, and malicious mischief coverage provided by this Policy, the NAMED INSURED agrees that during the term of coverage the following protective safeguards will be maintained at every INSURED PROJECT site covered by this Policy.

The protective safeguards to which this endorsement applies are indicated by an "X" below:

**1. Fencing**

[X] The entire INSURED PROJECT site will be surrounded with a chain link fence not less than six feet in height, suitably anchored in the ground a reasonable distance from insured property. Gates through the chain link fence will be securely locked during non-working hours.

**2. Lighting**

[X] The entire INSURED PROJECT site will be illuminated from sunset to sunrise, each day.

**3. Guard Services**

[ ] The NAMED INSURED will employ a guard person, whose sole duty will be the security of any INSURED PROJECT site, who will be on the premises of the INSURED PROJECT site during all non-working hours. This guard will be equipped with a telephone for immediate use.

[ ] The NAMED INSURED will employ a security service with one or more guards on the premises of the INSURED PROJECT site, with a recording system or watch clock, making no less frequently than hourly rounds covering the entire INSURED PROJECT site during all non-working hours. The guard or guards will record or have a watch clock record the time of each inspection round. The guard or guards will be equipped with a telephone for immediate use.

The Company will not pay for LOSS caused by or resulting from theft, vandalism or malicious mischief if the NAMED INSURED does not maintain these protective safeguards throughout the term of this Policy.

### B. FIRE COVERAGE

As a condition precedent to fire coverage provided by this Policy, the NAMED INSURED agrees that during the term of coverage the following protective safeguards will be maintained at every INSURED PROJECT site covered by this Policy.

The protective safeguards to which this endorsement applies are indicated by an "X" below:

 ©Chubb. 2016. All rights reserved.

**1.   Cutting and Welding**

☐ All combustible materials will be moved at least twenty five (25) feet away from the cutting or welding area(s) or will be covered or shielded by non-combustible material.

☐ All floor, wall, window and other openings including gaps, cracks or spaces in the building or structure, within twenty five (25) feet of the cutting or welding area(s) will be covered by non-combustible material.

☐ Dedicated stand-by firefighting equipment will be provided at the cutting or welding area.

☐ A designated employee, trained in the use of the stand-by firefighting equipment, will be assigned the sole responsibility of fire watch and will remain on duty at the cutting or welding area during cutting or welding operations and for at least sixty (60) minutes after such operations have ceased.  No hot work permits should be issued and no hot work activities should be permitted within two (2) hours of the end of the workday or the end of a shift.

**2.   Fire Hydrants**

☐ Prior to the start of construction, fire hydrants will be installed within the INSURED PROJECT site's boundaries or within 100 feet thereof and will be connected to a public water supply, tested, and fully operational.

**3.   Fencing**

☒ The entire INSURED PROJECT site will be surrounded with a chain link fence not less than six feet in height, suitably anchored in the ground a reasonable distance from insured property. Gates through the chain link fence will be securely locked during non-working hours.

**4.   Lighting**

☒ The entire INSURED PROJECT site will be illuminated from sunset to sunrise, each day.

**5.   Guard Services**

☐ The NAMED INSURED will employ a guard person, whose sole duty will be the security of any INSURED PROJECT site, who will be on the premises of the INSURED PROJECT site during all non-working hours. This guard will be equipped with a telephone for immediate use.

☐ The NAMED INSURED will employ a security service with one or more guards on the premises of the INSURED PROJECT site, with a recording system or watch clock, making no less frequently than hourly rounds covering the entire INSURED PROJECT site during all non-working hours. The guard or guards will record or have a watch clock record the time of each inspection round. The guard or guards will be equipped with a telephone for immediate use.

The Company will not pay for LOSS caused by or resulting from fire if the NAMED INSURED does not maintain these protective safeguards throughout the term of this Policy.

All other terms and conditions remain unchanged.

 ©Chubb. 2016. All rights reserved.

## RAIN, SLEET, ICE OR SNOW LIMITED COVERAGE ENDORSEMENT

| Named Insured<br>550 Seabreeze Development LLC | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>IMC | Policy Number<br>I08881479 001 | Policy Period<br>06/01/2017 to   12/15/2017 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CONSTRUCTION RISK COVERAGE FORM**

The following is added under **PART C EXTENSIONS OF COVERAGE**:

The Company will pay for LOSS to insured property caused by or resulting from rain, sleet, ice or snow, whether driven by wind or not, entering the interior of an INSURED PROJECT, whether or not the exterior of the INSURED PROJECT is complete.

The most the Company will pay for LOSS in any one OCCURRENCE for this EXTENSION OF COVERAGE is $5,000,000

The Sub-limit of Insurance shown above is part of and not in addition to the Limit of Insurance Per OCCURRENCE stated on the Declarations.

The deductible amount in any one OCCURRENCE for the coverage provided by this endorsement is $250,000

All other terms and conditions remain unchanged.

©Chubb. 2016. All rights reserved.

## TERRORISM EXCLUSION ENDORSEMENT

| Named Insured 550 Seabreeze Development LLC | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol IMC | Policy Number I08881479 001 | Policy Period 06/01/2017 to  12/15/2017 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**BOILER AND MACHINERY COVERAGE PART**
**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE FORM**
**COMMERCIAL PROPERTY COVERAGE PART**
**STANDARD PROPERTY POLICY**

The following exclusion is added to this policy and applies to all coverages, additional coverages, and coverage extensions, notwithstanding any provision to the contrary in this policy or any other endorsement hereto:

A. This insurance does not cover loss, damage, injury, expense, cost, or legal obligation directly or indirectly caused by or resulting from any of the following, regardless of any other cause or event, whether or not insured under this policy, contributing concurrently or in any other sequence thereto:

   1. "Act of Terrorism"; or

   2. Actions taken by or on behalf of any government or any branch or division thereof (including, without limitation, the uniformed armed forces, militia, police, state security, and anti-terrorism agencies) in responding to, preventing, combating, defending or retaliating against any "Act of Terrorism; or

   3. dispersal, application, or release of any actual or alleged pathogen, poison, biologic or chemical product, material, waste or substance as a result of an Act of Terrorism, and it reasonably appears that one purpose of the Act of Terrorism was to release such product, material, waste or substance.

This exclusion applies whether or not the "Act of Terrorism" was committed in concert with or on behalf of any organization or government.

The terms and limitations of this exclusion do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as, but not limited to, losses excluded by the "Nuclear Exclusion" or the "War Exclusion" or similar provision.

B. As used in this endorsement:

   1. "Act of Terrorism" means any act against persons, organizations or property of any nature that involves the following or preparation for the following:

      a. Use or threat of force or violence; or

      b. Commission or threat of a dangerous act; or

      c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

ALL-10750 (01/15) ©Chubb. 2016. All rights reserved.

2. Appears to be intended, in whole or in part, to:

    a. Intimidate or coerce a government or the civilian population; or

    b. Disrupt any segment of a nation's economy; or

    c. Influence the policy of a government by intimidation or coercion; or

    d. Affect the conduct of a government by mass destruction, assassination, kidnapping or hostage-taking; or

    e. Further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology; or

    f. Respond to governmental action or policy.

"Act of Terrorism" shall also include any incident determined to be such by an official, department or agency that has been specifically authorized by federal statute to make such a determination.

C. Exception Covering Certain Fire Losses

If an Act of Terrorism results in a fire and the direct physical loss or damage to property insured hereunder located in any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands and any territory or possession of the United States, that, either pursuant to the Standard Fire Policy or otherwise, prohibits exclusions for acts of terrorism that result in fire, this Company will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage to property insured hereunder and may be limited, in accordance with the Standard Fire Policy, to the lesser of the actual cash value of the property at the time of the loss or the amount which it would cost to repair or replace the property, without allowance for any increased cost of repair or replacement by reason of any ordinance or law, and without any compensation for business interruption, extra expense to continue business activities, or any other coverage for loss or damage other than direct physical loss or damage to the property insured hereunder.

All other terms and conditions remain unchanged.

 ©Chubb. 2016. All rights reserved.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>550 Seabreeze Development LLC | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>IMC | Policy Number<br>I08881479 001 | Policy Period<br>06/01/2017 to  12/15/2017 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

Authorized Agent

ALL-21101 (11-06) Ptd. In U.S.A.

## SERVICE OF SUIT ENDORSEMENT - FLORIDA

| Named Insured<br>550 Seabreeze Development LLC | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol<br>IMC | Policy Number<br>I08881479 001 | Policy Period<br>06/01/2017 to · 12/15/2017 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company)<br>Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

>Chief Financial Officer of the State of Florida
>Department of Financial Services
>200 E. Gaines Street
>Tallahassee, FL 32399

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.  However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Florida law requires that the Chief Financial Officer of the State of Florida be designated as the company's agent for service of process. In Florida the company designates the Chief Financial Officer as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Chief Financial Officer to mail process received on the company's behalf to the company person named below.

>Saverio Rocca, Assistant General Counsel
>Chubb Group of Insurance Companies
>436 Walnut Street
>Philadelphia, PA 19106-3703

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

**CHUBB**

Illinois Union Insurance Company
Insurance Company

550 Seabreeze Development LLC
Policyholder

I08881479 001
Policy Number

AMWINS BROKERAGE OF GEORGIA LLC
Broker/Producer

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY YOUR POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% FOR YEAR 2015, 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017, 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM THAT WOULD BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.**

You elected *NOT* to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL *NOT* PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $3,200 , however you elected to decline such coverage.



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.



# Questions About Your Insurance?

Answers to questions about your insurance, coverage information, or assistance in resolving complaints can be obtained by calling Chubb, Customer Support Service Department, at 1-800-352-4462.

ALL-5X45 (11/96) Ptd. in U.S.A.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



# Claims Directory
# Property and Inland Marine

Claims or Loss Notices related to this policy should be reported to the following:

| Claim Office | Email and Fax | Location |
|---|---|---|
| Chubb North American Claims | First Notices Email: ACEClaimsFirstNotice@chubb.com<br><br>First Notices Fax:<br>  (877)-395-0131 (Toll Free)<br>  (302)-476-7254 (Local)<br><br>Phone:<br>  (800)-433-0385 - Business Hours<br>  (800)-523-9254 – After Hours | P.O. Box 5122 Scranton, PA 18505-0554 |

MA-608255p (04/15)        ©Chubb. 2016. All rights reserved.        Page 1 of 1

# SIGNATURES

| Named Insured 550 Seabreeze Development LLC | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol IMC | Policy Number I08881479 001 | Policy Period 06/01/2017 to 12/15/2017 | Effective Date of Endorsement |
| Issued By (Name of Insurance Company) Illinois Union Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

Chubb. Insured.™